# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE GROVE, INC.<br>3 Westbrook Corporate Center, Suite 500<br>Westchester, IL 60154<br><br>     Plaintiff,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF<br>TRANSPORTATION<br>Mailing Address:<br>1200 New Jersey Ave, SE<br>Washington, DC 20590<br><br>Street Address:<br>400 7th Street, SW<br>Washington, DC 20590<br><br>UNITED STATES DEPARTMENT OF<br>TRANSPORTATION DEPARTMENTAL<br>OFFICE OF CIVIL RIGHTS<br>Mailing Address:<br>1200 New Jersey Ave, SE<br>Washington, DC 20590<br><br>Street Address:<br>400 7th Street, SW<br>Washington, DC 20590<br><br>JOSEPH AUSTIN, Associate Director<br>External Civil Rights Program Division<br>Departmental Office of Civil Rights<br>United States Department of Transportation<br>Mailing Address:<br>1200 New Jersey Ave, SE<br>Washington, DC 20590<br><br>Street Address:<br>400 7th Street, SW<br>Washington, DC 20590<br><br>     Defendants. | Civil Action No. ———— |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, The Grove, Inc. ("The Grove" or "the Company"), by its counsel, brings this complaint against the actions of the United States Department of Transportation ("Department" or "DOT"), the United States Department of Transportation Departmental Office of Civil Rights ("OCR"), and OCR's Associate Director of the External Civil Rights Programs Division, Joseph Austin ("Mr. Austin"), and alleges in support thereof the following:

## NATURE OF THE ACTION

1.      This is an action seeking judicial review of a final decision of OCR ("OCR Decision" or "Decision") upholding a determination of the Washington State Office of Minority and Women's Business Enterprises ("OMWBE") that The Grove is not eligible to participate in the OMWBE's federally financially assisted projects as a federal Airport Concessions Disadvantaged Business Enterprise ("ACDBE" or "DBE") under the Department's regulations. The Decision, signed by Mr. Austin, was issued on December 21, 2006 and supplemented on June 8, 2007. The Decision states that it is "applicable only to OMWBE" and "does not preclude The Grove from participating as an ACDBE in other jurisdictions in which it is currently certified."

2.      OCR's Decision, as amended on supplementation, acknowledges that The Grove's President and Chief Executive Officer, Michelle Dukler, purchased her interest in the Company for $2.6 million and that Ms. Dukler controls the Company by having the power to direct or cause the direction of its management and policies. Ms. Dukler is a socially and economically disadvantaged person under the DBE regulations and is the majority owner of The Grove, owning 51% of its shares. Nonetheless, the OCR Decision upholds OMWBE's determination that The Grove is not a DBE, largely on grounds never advanced or supported by

OMWBE itself. Because the OCR Decision is arbitrary, capricious, an abuse of discretion, contrary to law and the Department's own regulations, and was issued without observance of procedures required by law, and because it violates The Grove's right to equal protection under the laws, The Grove seeks in this action an order declaring the Decision to be invalid, vacating it, and enjoining the Defendants from acting in further reliance on it.

## JURISDICTION AND VENUE

3.      This court has jurisdiction under 5 U.S.C. § 702, and 28 U.S.C. §§1331, 1343, 1361, and 2201-02. Venue is proper under 28 U.S.C. § 1391.

## PARTIES

4.      Plaintiff The Grove, Inc. is a woman owned and controlled firm that is, and was at the time of the Decision, certified as an Airport Concessions Disadvantaged Business Enterprise ("ACDBE") by 20 jurisdictions. The Grove is staffed almost entirely by women and minorities. The Grove is, and was at all times material hereto, duly organized and existing under the laws of the State of Louisiana. The Grove has its corporate headquarters at 3 Westbrook Corporate Center, Suite 500, Westchester, IL 60154.

5.      Michelle Dukler, President, Chief Executive Officer, and majority owner of The Grove, has over 15 years of experience running small businesses, including several years in the airport concession business before she acquired The Grove. Her entrepreneurial career was recently featured in a leading industry publication, *Airport Revenue News*. Ms. Dukler supervises and manages the business affairs of The Grove on a full-time basis. OCR's Decision, as amended, acknowledges that Ms. Dukler has full control of The Grove as majority shareholder and as CEO.

6.      Defendant United States Department of Transportation ("Department" or "DOT") is a department of the executive branch of the United States Government, within which the Departmental Office of Civil Rights is included.

7.      Defendant United States Department of Transportation Departmental Office of Civil Rights ("OCR") is an office within the United States Department of Transportation that administers DOT's DBE program pursuant to regulations codified in 49 C.F.R. Parts 23 and 26. OCR processes and decides appeals from denials of DBE certification by state and local certifying agencies.

8.      Defendant Joseph Austin is the Associate Director of the External Civil Rights Program Division of OCR, and signed both the initial OCR Decision and its supplement.

## FACTUAL ALLEGATIONS

### A.      Statutory and Regulatory Background

9.      49 U.S.C. § 47107 (e) provides that the Secretary of Transportation may approve a project grant application for an airport development project only if an airport owner or operator provides written assurances that it will ensure to the maximum extent practicable that at least 10 percent of all businesses at the airport selling consumer products or providing consumer services to the public are small business concerns owned and controlled by a socially and economically disadvantaged individual as defined in 49 C.F.R. Parts 23 and 26.

10.     Pursuant to 49 U.S.C. § 47107, DOT has promulgated regulations governing the participation of socially and disadvantaged business enterprises in airport concessions. On March 22, 2005, DOT amended its regulations to include additional eligibility rules regarding personal net worth ("PNW"). Those regulations became effective April 23, 2005.

11.     According to DOT regulations, women shall be presumed to be "socially and economically disadvantaged." 49 C.F.R. §26.5(2)(vi). OCR's Decision does not question that

4

Ms. Dukler is a woman, and thus is presumed to be socially and economically disadvantaged within the meaning of this provision.

12.     The DOT's DBE regulations place primary responsibility for the certification of DBE enterprises upon recipients of federal airport funds, federal-aid highway funds, federal transit funds ("Recipients"), and their agents such as OMWBE.  49 C.F.R. §§26.3 and 26.63.

13.     Recipients are required to develop and implement DBE programs that conform to the standards set forth in 49 C.F.R. Part 23 (specifically for airport concessionaires) and 49 C.F.R. Part 26 (for airport concessionaires and other DBEs) ("the DBE Regulations"), in which DOT has set out certification standards under which  Recipients determine which firms qualify to participate in the DBE program.

14.     As pertinent to this case, the DOT DBE Regulations state:

(a)     "To be an eligible DBE, a firm must be at least 51 percent owned by socially and economically disadvantaged individuals."  49 C.F.R. §26.69(b).

(b)     "The socially and economically disadvantaged owners must possess the power to direct or cause the direction of the management and policies of the firm and to make day-to-day as well as long-term decisions on matters of management, policy and operations."  49 C.F.R. §26.71(d).

(c)     "The contributions of capital or expertise by the socially and economically disadvantaged owners to acquire their ownership interests must be real and substantial."  49 C.F.R. §26.69(e).  On information and belief (based on a review of all DBE appeal decisions made available to the public at http://osdbu.dot.gov/Default.aspx?tabid=143 ) (1) the largest contribution of capital that OCR had ever found – before this case – not to be "real and substantial" was $12,800 (Ms. Dukler's capital contribution to acquire her ownership interest in The Grove was $2.6 million, over 200 times greater);  (2) OCR has never found that a socially

and economically disadvantaged person with responsibility for the day-to-day operations of the company failed to meet the requirements for "real and substantial" contribution, except in cases in which the individual's contribution was only nominal; and (3) OCR has never scrutinized the capital contribution of a racial minority business owner who controls the day-to-day operations of his or her business in the way that it has scrutinized Ms. Dukler's contribution.

(d)    "Only an independent business may be certified as a DBE. An independent business is one the viability of which does not depend on its relationship with another firm or firms." 49 C.F.R. §26.71(b).

(e)    While The Grove's application was pending before OMWBE, DOT also adopted a regulation providing that "[a]ny individual who has a personal net worth exceeding [$750,000] is not a socially and economically disadvantaged individual for purposes of this part, even if the individual is a member of a group otherwise presumed to be disadvantaged." 49 C.F.R. §23.35.

15.    Firms that have applied to a Recipient for DBE certification and been denied may file an administrative appeal with the OCR within 90 days from the date of denial. 49 C.F.R. § 26.89.

16.    The DOT DBE rules set forth procedural and due process requirements pertaining to OCR's review of a decision by a Recipient acting as a certifying agency. In pertinent part, the regulations as set forth in 49 C.F.R. §§26.89(f)(5) and (f)(6) state:

(a)    "The Department does not uphold [the certifying agency's] decision based on grounds not specified in [its] decision." §26.89(f)(5).

(b)    "The Department's decision is based on the status and circumstances of the firm as of the date of the decision being appealed." §26.89(f)(6).

(c)     Certification officials may not refuse to certify a firm based "solely on historical information indicating a lack of ownership or control of the firm by socially and economically disadvantaged individuals at some time in the past." 49 C.F.R. §26.73(b).

**B.     History of the Case**

17.     The Grove submitted an application dated August 26, 2005, for certification as an ACDBE to OMWBE (the "Application").  The Application presented evidence that:

(a)     Ms. Dukler, a socially and economically disadvantaged individual, owned at least 51% of The Grove's stock, a majority.

(b)     Ms. Dukler, as Chief Executive Officer, directed or caused the direction of the management and policies of the firm and made day-to-day as well as long-term decisions on matters of management, policy, and operations.

(c)     Ms. Dukler controls The Grove's Board of Directors.

(d)     Ms. Dukler paid $2.6 million for her 51% ownership interest in the Company by obtaining a personal loan in February 2004 for $2.6 million secured by personal assets and her home.

(e)     The Grove operated independently and did not depend on a relationship with any third firm.

18.     On August 17, 2004, Ms. Dukler obtained a personal bank loan from Fifth Third Bank in the amount of $2.6 million, secured by her personal promissory note, and used the proceeds to pay off  her prior February 2004 loan in that amount.  Fifth Third Bank also required Ms. Dukler to execute an agreement in which she pledged all of her assets and personal property as security for this loan.  Pursuant to the express terms of the promissory note, Ms. Dukler was,

and remains, personally liable for repayment of this loan to Fifth Third Bank, as well as all Company loans.

19.     In a letter dated November 30, 2005, OMWBE determined that Ms. Dukler owned 51% of The Grove, but concluded that The Grove was not eligible for certification as an ACDBE because:

(a)     Ms. Dukler, although an owner of 51% of the firm, "[could not] convene a meeting of the shareholders on her own," and thus did not control The Grove to the extent required under 49 C.F.R. Part 26.

(b)     Ms. Dukler exceeded the federal program's personal net worth  ("PNW") cap because, when she took out the personal loan for $2.6 million from Fifth Third Bank in August 2004 to pay off the February 2004 personal loan that she had initially used to acquire her interest in The Grove, "the firm was used for collateral, not Ms. Dukler's other assets," making her no longer economically disadvantaged and thus presumptively not eligible under the personal net worth rules.  OMWBE did not explain why Ms. Dukler's personal debt of $2.6 million should not be considered a liability in determining her personal net worth.  OMWBE also contended (erroneously) that certain of her personal assets were "not encumbered" by the loan and should themselves be included in the PNW calculation.

(c)     The $2.6 million Ms. Dukler paid for her ownership interest in the firm did not constitute a "real and substantial" contribution for purposes of ownership because the funds came from a joint checking account she maintained with her husband, who was also a member of Star Foods, LLC, the Grove's minority shareholder.

(d)     The Grove did not operate independently as required by 49 C.F.R. Part 26 because of "the previous and current relationship between the firm and Star Foods, LLC."

(e)     The Grove had not met its burden that "the firm – as distinct from the family as a whole – control[led] the firm as required by regulation."

20.     On June 28, 2006, OMWBE denied The Grove's appeal of its November 30, 2005 determination.  OMWBE found that:

(a)     Ms. Dukler's "ownership of the firm [was] not real and substantial." OMWBE acknowledged that Ms. Dukler's initial personal loan to buy the shares, which came from a non-disadvantaged individual, was not prohibited by the DBE regulations, but held that the placement of those funds in a joint checking account with her husband for one day before they were used to buy her majority interest in The Grove served to make her ownership of the shares "not real and substantial as required by the [DBE] regulations.  *See* 49 C.F.R. 26.69(h)." OMWBE did not cite any specific provision of the cited regulation, 26.69(h), or explain why it supported its conclusion.

(b)     As to the joint checking account, OMWBE acknowledged The Grove's reliance on  49 C.F.R. § 26.69(j), which expressly provides that a Recipient "must not regard a contribution of capital as failing to be real and substantial, or find a firm ineligible, solely because . . . there is a provision for the co-signature of a spouse . . . on . . . bank signature cards." However, and again without explanation, OMWBE professed to be unable to "satisfactorily trace [] the disposition" of the "borrowed funds to acquire the stock," even though the undisputed evidence of record established that Ms. Dukler had borrowed the $2.6 million on February 5, 2004, deposited the $2.6 million into the joint account, and then purchased her shares of The Grove the next day, February 6, 2004, using the $2.6 million drawn from the same account. OMWBE offered a "*see also*" reference to another DBE regulation, 49 C.F.R. § 26.69(j)(3), as purported legal support for its (factually unsupported) "failure to trace" ground; however,  the provision cited sets forth grounds on which OMWBE "must **not** regard a contribution of capital

as failing to be real and substantial." (emphasis added). OMWBE did not quote the provision or make any effort to explain how the provision supported its conclusion. Finally, OMWBE did not address 49 C.F.R. § 26.69(i)(1) which required it, in any event, to consider jointly held marital assets (such as the joint account) to be Ms. Dukler's sole property upon Mr. Dukler's irrevocable renouncement and transfer of all his rights in the property, which he made on February 5, 2004. A copy of Mr. Dukler's renouncement and transfer was part of the record evidence known to both OMWBE and OCR.

(c)    Ms. Dukler "fail[ed] to meet the PNW requirements." OMWBE repeated its earlier erroneous assertion that Ms. Dukler's personal assets were "not encumbered" by the Fifth Third Bank loan. OMWBE also offered no explanation as to why Ms. Dukler's personal debt of $2.6 million in the form of the Fifth Third Bank loan should not be considered a liability in determining her personal net worth. OMWBE did not refer to any provision of the DBE regulations to support its conclusions on this point, or cite or refer to any other supporting legal authority.

(d)    Ms. Dukler "fail[ed] to maintain operational and managerial control of the Firm." OMWBE acknowledged that Ms. Dukler could convene a meeting of The Grove's shareholders on her own at any time by amending the Company's bylaws, but held, again without any reference to the DBE regulations or any legal authority of any kind, that this was not enough to show control. (As noted below, OCR initially sought, improperly, to uphold this finding of lack of control on grounds not relied on by OMWBE, but has since abandoned that effort and conceded that Ms. Dukler controls The Grove.)

(e)    The Grove did "not operate as an independent business." OMWBE stated that The Grove was "intertwined with Star Foods, LLC," its minority shareholder, which was owned by Mr. Cowell and Mr. Dukler. (OCR was or should have been aware that, at the time of

its Decision, Mr. Dukler had divested any interest in Star Foods.)  OMWBE relied on 49 C.F.R.

§ 26.71(b)(2), which allows consideration of whether "present or recent employer/employee

relationships" between DBE firms and non-DBE firms or persons "compromise the

independence of the potential DBE firm."  However, it described Mr. Cowell and Mr. Dukler as

"former officers and directors of The Grove," and did not identify any employer/employee

relationship at all, much less a "present or recent" one that might "compromise the

independence" of The Grove.  Moreover, as OMWBE was or should have been aware, Mr.

Cowell was never an officer of The Grove.  OMWBE did not cite any actions of either Mr.

Cowell or Mr. Dukler of any kind that indicated their involvement with management or day-to-

day operations of The Grove.  (In fact, they resigned as officers and/or directors of The Grove

[as applicable] following Ms. Dukler's purchase of a controlling interest in the Company.)  Nor

did OMWBE cite any other  legal authority that would prohibit  Mr. Cowell or Mr. Dukler from

being involved with the management of the Company.  OMWBE also cited 49 C.F.R. § 26.71(l),

which applies to a firm "formerly owned and/or controlled by a non-disadvantaged individual,"

and thus is inapplicable to The Grove.  Finally, OMWBE  contended that Mr. Dukler was CEO

of a company that operated in the "same business" as The Grove, but that company operated in

manufacturing and wholesale distribution, and The Grove is in retail sales in airports.  OMWBE

did not, in any event, explain how Mr. Dukler's involvement in the other company compromised

the independence of The Grove.  OMWBE did not cite or address numerous other factors the

DBE regulations require it to address in making a finding as to independence, including

"relationships with non-DBE firms, in such areas as personnel, facilities, equipment, financial

and/or bonding support, and other resources," § 26.71(b)(1), "the firm's relationships with prime

contractors," § 26.71(b)(3), and "the consistency of relationships between the potential DBE and

non-DBE firms with normal industry practice."  § 26.71(b)(4).  Finally, the DBE regulations

cited by OMWBE on this point are meant to "govern determinations concerning control," and OCR has since conceded that Ms. Dukler, not Mr. Cowell, Mr. Dukler, or Star Foods, controls The Grove.

   (f) The Grove "operat[ed] as a family business." OMWBE stated it was "unable to determine" that The Grove was "controlled by the eligible owner [Ms. Dukler] as distinct from the family as a whole." OMWBE did not cite any law or regulation in support of this assertion, or explain what it meant by the term "family business," which does not appear in the DOT DBE regulations. OCR has in any event since conceded that Ms. Dukler, not Messrs. Cowell or Dukler or Star Foods, controls The Grove.

   (g) The Grove was "affiliated with Star Foods, Inc." Citing 49 C.F.R. § 26.5, but not quoting or discussing that regulation or any other legal authority, including the SBA standards it was required to apply under 49 C.F.R. § 26.65, OMWBE held that Star Foods was an "affiliate" of The Grove because it "directly own[ed] The Grove" and because "the individual owners" of Star Foods have "had significant control of the firm in the past." OMWBE's initial decision had not cited this ground, although OMWBE had threatened to add it if The Grove appealed that decision. OMWBE did not address the uncontradicted evidence of record that Star Foods did not own a controlling interest in The Grove, but rather a minority interest, and that there was no cross-ownership as The Grove did not own any of Star Foods' shares. OMWBE cited no evidence of common investments or economic dependence of one firm on the other.

  21. On September 26, 2006, The Grove appealed OMWBE's determination to DOT, requesting that DOT reverse OMWBE's denial and direct OMWBE to certify The Grove as a DBE, as had been done by 20 other jurisdictions (including the City of Chicago, the jurisdiction in which the Grove is headquartered). The Grove pointed to the evidence it had presented that:

(a)    Ms. Dukler did in fact control The Grove as the majority shareholder, Board Chairperson, sole Director, and the Company's President and Chief Executive Officer.

(b)    Ms. Dukler acquired controlling ownership through a real and substantial payment of $2.6 million, for which she remained liable.

(c)    The borrowed funds used by Ms. Dukler to acquire her stock ownership (and its refinancing), and the assets used as loan collateral in each instance, were expressly provided for as permissible under the DOT DBE regulations, and Ms. Dukler was personally liable for the loan used to finance her stock ownership; it was not an obligation of The Grove.

(d)    Ms. Dukler's PNW did not exceed the PNW standard that had been made applicable to owners of ACDBE firms after the time of the Application.

(e)    The Grove's articles of incorporation, bylaws, and corporate action taken in conformity therewith allowed Ms. Dukler, the majority shareholder, to exercise unfettered control.

(f)    Ms. Dukler had the expertise to serve as the Company's CEO and to manage The Grove, and had done so on a daily basis for nearly three years.

(g)    Ms. Dukler's husband was not an officer, director, employee, or shareholder of The Grove (though the DOT DBE rules would have allowed this), and he was not involved in the governance, management, or operations of the Company.

(h)    The Grove was an independent business and was not an affiliate of any other business.

22.    In a letter dated December 21, 2006, and signed by Joseph Austin, OCR denied The Grove's appeal. The Grove submitted a February 15, 2007 response showing the numerous errors in that Decision. OCR supplemented its December, 2006 letter with a June 8, 2007 letter also signed by Joseph Austin that stated that, although OCR's initial letter decision had been

13

"administratively final and not subject to petitions for reconsideration," OCR "wish[ed] to address specific points [The Grove] raised."

23.    OCR's June 8, 2007 letter, which it stated should be considered part of its final Decision,  acknowledged and admitted, contrary to the conclusion in OCR's December, 2006 letter and to OMWBE's determination, that Ms. Dukler controls The Grove.

24.    Rather than simply vacating OMWBE's  decision based on its many patent errors of fact and law, OCR engaged in a wide-ranging effort, in violation of the DOT regulations governing DBE appeals, *see, e.g.,* 49 C.F.R. §26.89(f)(5), to affirm the OMWBE decision on grounds and reasoning never advanced by OMWBE, many of which grounds are also directly inconsistent with OCR's belated concession that Ms. Dukler in fact controls The Grove.   OCR also relied on grounds OCR had never before stated in any prior case and on grounds contrary to its rules.  OCR grossly violated provisions of the Administrative Procedure Act applicable to agency decision-making and rulemaking

25.    OCR did not state that its Decision was "based on grounds… specified" in OMWBE's decision as required by §26.89(f)(5).

26.    OCR instead stated that its general and unspecific references to record evidence were "relevant to the core concepts raised by OMWBE and are appropriately addressed in our decisions."  OCR did not explain what it meant by the phrase "relevant to the core concepts raised," which does not appear in the DOT DBE regulations, or why it used that phrase rather than "based on grounds… specified," which is the language of the regulation.

27.    For example, and illustrative of OCR's conduct, OCR cited the following factors in purported support of the Decision:

(a)    With respect to The Grove's status as an independent business, OCR stated that it "could not reconcile how Ms. Dukler's investment should be considered differently

from Star Foods' 'infusion of capital' for which it received no corresponding purchase of stock ownership in the business." OCR did not challenge The Grove's showing that neither Star Foods nor any present or former officer of Star Foods had any role whatsoever in the operation of management of The Grove; nor did it cite any evidence of record that The Grove was either operationally or financially dependent on Star Foods. OCR also did not cite to or state any accounting or legal principle to support its characterization of any investment of capital by Star Foods as compromising the independence of The Grove. The Star Foods capital investment (in the form of a stock purchase) was made in 2000 (four years prior to Ms. Dukler's stock purchase), and OCR did not cite any infusion of capital from Star Foods in the seven years since then, or any other specific action by Star Foods relevant to The Grove's status as an independent business. OMWBE had not relied in its decision on Star Foods' "infusion of capital," or on any comparison of that "infusion" to Ms. Dukler's investment.

        (b)     OCR acknowledged that §26.89(f) requires OCR's decision in a certification appeal to be based on the status and circumstances of the firm as of the date of the decision being appealed, but asserted that "it is not reasonable to read paragraph (f) literally." OCR did not cite any support in its precedent (or otherwise) for this assertion.

        (c)     Although the record includes a stock purchase agreement and other legal material documenting Ms. Dukler's stock purchase, OCR stated that "the record indicates that an arm's-length transaction between the firm's previous owners and Ms. Dukler did not occur and that the arrangement whereby Ms. Dukler obtained her ownership interest did not appear to meet the requirements of the regulation." OCR did not state any principle of corporate law or any generally accepted accounting principle to refute the evidence that a bonafide and arm's-length stock purchase transaction did occur, or point to any facts or record evidence to support its

suppositions.  Moreover, OMWBE had not relied in its decision on any purported absence of an "arms-length transaction between the firm's previous owners and Ms. Dukler."

        (d)    OCR stated that "substantial record evidence supported a conclusion that Ms. Dukler had not met her burden of proof in determining that her contribution of capital to acquire her ownership interest in The Grove was 'real, substantial, and continuing, going beyond pro forma ownership of the firm as reflected in the ownership documents,' as required by §26.69(c)."  OCR did not state any principle of business valuation, or any generally accepted accounting principle, to support its supposition that $2.6 million was not a real and substantial contribution.  As set out above, OCR's conclusion is also not supported by any OCR precedent on the subject, all of which discusses capital contributions that were orders of magnitude less than Ms. Dukler's.  OMWBE had relied for its conclusion on this point on the fact that the $2.6 million was in a joint bank account for a day, a ground OCR did not adopt, and that was inconsistent with the DOT DBE regulations.  OMWBE also had not relied on any contention that $2.6 million was not fair consideration for a 51% share of The Grove in 2004, yet OCR invented an entire argument on appeal, unsupported by any sound principles of accounting or business valuation, that the $2.6 million paid by Ms. Dukler was inadequate consideration for her shares. In this regard, OCR even went so far as to assert that the funds that Ms. Dukler borrowed were not hers and should be regarded as "the bank's money," despite being aware that Ms. Dukler pays interest on these funds from her personal account.  Finally, OCR did not explain how its conclusion that Ms. Dukler fully controls the Grove (reached in its June 8, 2007 supplement to its Decision) squares with its assertion that her contribution of capital was not "real, substantial, and continuing, going beyond pro forma ownership of the firm."

        (e)    OCR stated that Ms. Dukler's consumer promissory note should not be counted as a liability for purposes of determining her PNW because, notwithstanding the specific

terms of the loan agreement that she executed with the bank, "[i]t does not appear to be the case in The Grove's arrangement" that Ms. Dukler was required or needed to pledge her home and personal assets in order to capitalize or expand The Grove.  OCR did not state any accounting principle, or cite to any legal precedent whatsoever, to support its disregard the terms of the loan agreement, nor did it provide any other basis to support its assertion that Ms. Dukler's promissory note should not be considered as a liability of hers.  Ms. Dukler remains personally liable on the note whether or not  her assets were pledged as security for it.  OCR's conclusion was, in any event, inconsistent with the uncontested evidence of record, which showed that Ms. Dukler was required to pledge her assets as security for the loan.

(f)     OCR's Decision is replete with other suppositional statements, including:

- OCR's statement that the arrangement by which Ms. Dukler obtained her ownership interest in The Grove  "does not appear" to meet the requirements of the regulation.

- OCR's statement that it "does not appear to be the case" that Ms. Dukler demonstrated that her personal assets were required or necessary to obtain funding.

- OCR's statement that Ms. Dukler "appears to have financed the transaction" by which she obtained a loan with assistance from a non-disadvantaged individual.

28.     OCR's material departure from the procedures that explicitly govern DBE appeals establishes that OCR did not act as a neutral and impartial reviewer of the OMWBE decision, but, instead, was an advocate for a given result.

## CAUSES OF ACTION

## COUNT I   (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

29.     Plaintiff realleges and reincorporates paragraphs 1 through 28 as though fully set forth herein.

30.     In issuing the Decision, Defendants acted arbitrarily and capriciously, abused their discretion, acted contrary to law, and acted without observance required by law, within the meaning of 5 U.S.C. §706(2)(A).

31.     OCR based its Decision on numerous errors of law and incorrect applications of DOT regulations, including but not limited to the following:

(a)     OCR upheld OMWBE's determination denying DBE certification for The Grove even though The Grove is both owned and controlled by Ms. Dukler, and thus is entitled to participate in the DBE program under 49 U.S.C. §47107 (e).

(b)     OCR incorrectly applied 49 C.F.R. §26.69, and ignored basic principles of commercial transactions and contract law, in stating that Ms. Dukler's funds to acquire her control of The Grove (and refinance the acquisition) were not her funds because they were obtained through loans.

(c)     OCR incorrectly applied 49 C.F.R. §26.69 in finding that the financing obtained by Ms. Dukler from an individual, and refinanced with a commercial bank, violated DOT rules, even though §26.69 expressly allows disadvantaged individuals to obtain financing through secured loans from individuals and/or through bank loans.

(d)     OCR incorrectly applied 49 C.F.R. §26.69 in determining that the $2.6 million purchase price that Ms. Dukler paid for her controlling interest in The Grove was not

"substantial" under §26.69.  OCR did not cite any DOT rule that provided it the authority to determine whether the purchase price for an equity interest is sufficient, and even if it did, such measures of value would have to be reasonable and rational.  OCR's "findings" and methods do not reflect any rational method of determining fair market value.

(e)    OCR erred in determining that Ms. Dukler's August 2004 bank loan was a "contingent" liability, even though Ms. Dukler was and remains personally liable for the debt and its repayment.

(f)    OCR erred in interpreting 49 C.F.R. §26.71 to apply to The Grove, when the provision by its terms applies only to a firm formerly owned and/or controlled by a non-disadvantaged individual and The Grove was not.

(g)    OCR violated 49 C.F.R. §26.89(f) by not basing its decision on the status and circumstances of The Grove as of June 28, 2006, the date of the OMWBE decision.

(h)    OCR failed to adhere to the due process standards required of a government agency in making factual findings based on substantial and competent evidence.

(i)    OCR failed to adhere to its rules, but rather imposed additional and inconsistent requirements on The Grove with respect to its Application without engaging in required rulemaking procedures.

32.    OCR made numerous factual errors and assertions unsupported by any evidence of record, including but not limited to:

(a)    OCR's statement that Ms. Dukler used  The Grove's funds to make payments on her personal loan account, despite its acknowledgment that she used money from her personal bank account for this purpose.

(b)    OCR's  statement that Ms. Dukler's interest payment was not "substantial," despite its acknowledgment that Ms. Dukler had paid $164,406 in interest from her

own funds on her $2.6 million loan, constituting a 6.3% interest rate. To date, Ms. Dukler has

paid $462,739.45 in interest from her own funds.

(c)    OCR's confusion of Ms. Dukler's August 2004 bank loan with The

Grove's February 17, 2004 business loan, and its mistaken statement that The Grove's funds

were used to pay for Ms. Dukler's shares on February 6, 2004 (despite its acknowledgment that

Ms. Dukler borrowed $2.6 million on February 5, 2004 from Mr. Cowell and purchased a 51%

share of The Grove for $2.6 million on February 6, 2004, and that Ms. Dukler executed a $2.6

million consumer note with Fifth Third Bank in August 2004 and used her funds from the loan to

pay Mr. Cowell).

(d)    OCR's reliance, in determining that the $2.6 million price for Ms.

Dukler's shares of The Grove was inadequate, on gross rather than net revenues and on a 5-year-

old price paid by Star Foods in 1999 for a minority stake, and its refusal to consider the financial

condition of The Grove in February 2004 including accumulated annual losses and other relevant

facts of The Grove's operations.

33.    OCR violated the applicable regulation governing DBE appeals, 49 C.F.R.

§26.89(f)(5), by reaching conclusions based on grounds not specified in OMWBE's decision.

Thus, OCR's conclusions are not only wrong, but OCR was wrong in even attempting to rely on

them as a basis for its Decision. Examples include:

(a)    The conclusion that Ms. Dukler purchased her shares by using funds from

The Grove's loan from Fifth Third Bank, rather than her own funds.

(b)    The conclusion that Ms. Dukler's interest payments were not substantial in

comparison with the $2.6 million loan.

(c)    The conclusion that Ms. Dukler did not meet the burden of proof that her

funds, as distinct from Mr. Cowell's, formed the basis for her contribution in The Grove.

(d)    The issues raised concerning the assets attributed to Schlitz Studios or Schlitz Finances, two firms previously owned by Ms. Dukler.

(e)    The conclusion that Ms. Dukler's payment of $2.6 million for her purchase of The Grove's shares was not sufficient consideration for the purchase.

(f)    The conclusion that Mr. Cowell was repaid with funds from Fifth Third Bank rather than Ms. Dukler.

(g)    The conclusion that the Stockholder's agreement provision concerning the transfer of shares limits Ms. Dukler's control of The Grove.

(h)    The conclusion that The Grove was not an independent company in 2006 based on an investment made by Star Foods in the Company (under its prior owners) seven years earlier in 1999.

(i)    Questions concerning Section 11 of the February 17, 2004, Fifth Third Bank Loan and Security Agreement.

(j)    The conclusion that Section 15 of the February 17, 2004, Fifth Third Bank Loan and Security Agreement affected Ms. Dukler's control of The Grove.

## COUNT II  (VIOLATION OF EQUAL PROTECTION)

34.    Plaintiff realleges and reincorporates paragraphs 1 through 33 as though fully set forth herein.

35.    In issuing the Decision, Defendants denied The Grove equal protection of the laws as required by the Fifth Amendment to the United States Constitution, by intentionally treating the appeal of its denial of DBE status differently from others similarly situated, in the following ways, among others:

a.    By finding that Ms. Dukler's $2.6 million capital contribution to acquire her ownership interest in the Company was not "real and substantial," despite the

21

fact that the largest contribution of capital OCR had ever found – before this case – not to be "real and substantial" was $12,800.00.

b.  By finding that her contribution was not "real and substantial" despite having never found that a socially and economically disadvantaged individual with responsibility for the day-to-day operations of the company failed to meet the requirements for "real and substantial" contribution, except in cases in which the individual's contribution was only nominal;

c.  By scrutinizing the sufficiency of Ms. Dukler's $2.6 million capital contribution to acquire her ownership interest, despite having never scrutinized the sufficiency of the capital contribution of a racial minority business owner who controls the day-to-day operations of his or her business in this way, except in cases in which the individual's contribution was only nominal;

d.  By contending that funds Ms. Dukler had acquired from a bank, pursuant to a loan on which she pays interest and which is liable for repayment, were not "her money;" and

e.  By developing extensive additional (and erroneous) grounds on appeal of the OMWBE decision in order to single out The Grove for denial of DBE status, rather than acting as a neutral arbiter of the appeal.


WHEREFORE, Plaintiff respectfully prays that this Court:

A.  Declare the Decision to be arbitrary, capricious, an abuse of discretion, contrary to law, and unsupported by substantial evidence.

B.  Declare Defendant's actions to be in violation of The Grove's right to equal protection of the laws.

C.  Vacate the Decision, and preliminarily and permanently enjoin Defendants from enforcing the Decision or acting in reliance upon it.

D.  Award Plaintiff its reasonable attorney fees and costs incurred herein, under the Equal Access to Justice Act and other applicable provisions of the law, and,

E.  Grant such other and further relief as the Court may deem appropriate.


Respectfully submitted,


John Longstreth (#367047)
William Kirk (#370762)
KIRKPATRICK & LOCKHART PRESTON
GATES ELLIS LLP
1601 K Street, N.W.
Washington, D.C.  20006-1600
(202) 778-9000
(202) 778-9100 (fax)

Counsel for Plaintiff, The Grove, Inc.


Date:  September 7, 2007

CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

The Grove, Inc.

88888

**DEFENDANTS**

United States Department of Transportation
United Stated Department of Transportation Departmental Office of Civil Rights
Joseph Austin

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
                    (IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Cook County (IL)
   (EXCEPT IN U.S. PLAINTIFF CASES)   88888

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

John Longstreth (#367047)
William Kirk (#370762)
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
1601 K Street, N.W.
Washington, D.C. 20006-1600
(202) 778-9000
(202) 778-9100 (fax)

Case: 1:07-cv-01591
Assigned To : Kennedy, Henry H.
Assign. Date : 9/7/2007
Description: Admn. Agency Review

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

O  1 U.S. Government
     Plaintiff

O  3 Federal Question
     (U.S. Government Not a Party)

⊚  2 U.S. Government
     Defendant

O  4 Diversity
     (Indicate Citizenship of
     Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**O A. Antitrust**

☐ 410 Antitrust

**O B. Personal Injury/
   Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**O C. Administrative Agency
   Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If
      Administrative Agency is Involved)

**O D. Temporary Restraining
   Order/Preliminary
   Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

**O E. General Civil (Other)**        **OR**        **O F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
      defendant
☐ 871 IRS-Third Party 26
      USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
      of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
      Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
      Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
      Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
      Exchange
☐ 875 Customer Challenge 12 USC
      3410
☐ 900 Appeal of fee determination
      under equal access to Justice
☐ 950 Constitutionality of State
      Statutes
☐ 890 Other Statutory Actions (if
      not administrative agency
      review or Privacy Act

| ○ G. Habeas Corpus/ 2255 | ○ H. Employment Discrimination | ○ I. FOIA/PRIVACY ACT | ○ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. Labor/ERISA (non-employment) | ○ L. Other Civil Rights (non-employment) | ○ M. Contract | ○ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
Violation of Administrative Procedure Act and Fifth Amendment       _I.U.S.C. 702_

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ _____ Check YES only if demanded in complaint<br>JURY DEMAND:   YES ☐   NO ☒ |
|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐   NO ☒ | If yes, please complete related case form. |
|---|---|---|---|

DATE  September 7, 2007   SIGNATURE OF ATTORNEY OF RECORD   _John Daystett_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.